(Decided 16th December, 1880.)

---

THE PENNSYLVANIA RAILROAD COMPANY IN MARYLAND *vs.* THE CONSOLIDATION COAL COMPANY and THE CUMBERLAND AND PENNSYLVANIA RAILROAD COMPANY.

*Construction of the Act of 1878, ch. 192—Injunction.*

Under the Act of 1878, ch. 192, entitled, an Act to enlarge the powers of the Pennsylvania Railroad Company in Maryland, the appellant had the power, upon complying with the requirements of that Act, to construct its road across the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad, on the west side of Wills' Creek, and then to cross over the creek to its east side. But as the appellant was not justified in making its crossing over the Potomac Wharf Branch forcibly, and against the consent of the appellees, without a written agreement between them conferring the easement on the appellant, which agreement was not executed; the appellees were entitled to an injunction restraining the appellant from using said crossing over the Potomac Wharf Branch.

APPEAL from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court.

Pa. R. R. Co. in Md. *vs.* Consol. Coal Co. and C. & P. R. R. Co.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ROBINSON, J., and the decision was participated in by GRASON and IRVING, J.

*Frederick Williams* and *William Walsh,* for the appellant.

*J. H. Gordon, William F. Frick* and *I. Nevett Steele,* for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Allegany County in equity, continuing and making perpetual, an injunction which had been granted upon the bill of the appellees, restraining the appellant from using a crossing over the railroad of the appellees, known as the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad Company. The order of the Circuit Court was passed upon bill, answer, replication and proof.

The appeal was heard at the last term, and has been re-argued under the order of this Court. The several Acts of incorporation of the appellees, and their respective rights in the railroads and branches held and operated by them, are stated in the bill, these need not be particularly mentioned; but the roads of the appellees may be treated for the purposes of this case as belonging to the Cumberland and Pennsylvania Railroad Company; and will be spoken of as the Cumberland and Pennsylvania Railroad and its Potomac Wharf Branch. It appears from the record, that the Cumberland and Pennsylvania Railroad, has for a number of years been engaged in transporting coal from the State line opposite Piedmont, through the coal region of the George's Creek Valley to Cumberland, connecting by its main line with the Baltimore and Ohio Railroad, and thence with the basins of the Canal, and by its Potomac Wharf Branch with the Poto-

mac River, and thence by water with the Canal.   On the
west of Cumberland is a narrow defile through Wills'
Mountain called the *Narrows,* through which a stream
flows called Wills' Creek.   On the east side of this stream
is located the Cumberland and Pennsylvania Railroad;
and at the eastern end of the Narrows, its Potomac Wharf
Branch deflects in a south-western direction, crossing
Wills' Creek and extending to the Potomac.

In 1876, the appellant company was chartered under
the Act of 1870, ch. 476, and the amendment thereto
of 1874, ch. 202 ; the *termini* of its proposed road as
stated in the certificate were, "some convenient point
in the City of Cumberland, Allegany County, State of
Maryland, and some suitable or convenient point at or
near Ellerslie, in the County and State aforesaid."   It
appears that Ellerslie is at or near the Pennsylvania line.

In constructing its railroad, the appellant encountered
insuperable obstacles in entering Cumberland.   The only
approach to the city from the west, being through the
Narrows, an attempt was made by the appellant to secure,
by condemnation, a right of way on the east side of the
creek through the Narrows, but the whole available space
on that side having been condemned for the use of the
Cumberland and Pennsylvania Railroad Company, this
attempt was ineffectual ; then it became necessary to cross
the railroad of the appellees, and also the Potomac Wharf
Branch, but doubts existed whether under its charter,
and the provisions of the general Acts of 1870 and 1874,
the appellant had the power to cross an existing railroad.
Under these circumstances, the Act of 1878, ch. 192, was
passed; and the construction of this Act, is the first and
most important question to be considered.

It appears from the record, that this Act was the result
of an agreement or arrangement between the railroad
companies ; it was drafted by the appellees' counsel, and
assented to by the officers of the respective companies.

Its object as stated in the title was "to enlarge the powers of the Pennsylvania Railroad Company in Maryland."

In the recital, after stating the incorporation of the appellant, for the purpose of constructing and operating a railroad from a point at the State line, near Ellerslie, to and within the City of Cumberland, and that the company is now ready to build said road into said city, with proper depot and terminal facilities for general freight and passenger traffic, and also to connect with the Chesapeake and Ohio Canal; the Act recites that "the only inlet for said railroad to said city or canal, is through the precipitous mountain gorge, near said city, known as the Narrows, through which the Cumberland and Pennsylvania Railroad is now operated on the east side of Wills' Creek." It then proceeds to enact:

" That in order to enable the said Pennsylvania Railroad Company in Maryland, to carry out the purposes for which it was organized, as stated in the foregoing preamble, the said company is hereby granted express authority to cross the tracks of the Cumberland and Pennsylvania Railroad at a point immediately west of the western entrance of the Narrows; (then prescribes particularly the manner of *such* crossing above the tracks,) and to cross the Potomac Wharf Branch of said Cumberland and Pennsylvania Railroad, and to cross the National road leading from the City of Cumberland, such last mentioned two crossings to be either at grade or by substantial bridging or trestling over the same, as may be determined by the president and directors of said Pennsylvania Railroad Company, as being most advisable to reach, either their depot or said canal." The Act then prescribes particularly in what manner the crossings shall be constructed if above grade, and the safeguards for the security and protection of the Cumberland and Pennsylvania Railroad

Company, if the crossing of the Potomac Wharf Branch be at grade.

The Act then proceeds as follows: "And provided also, that after crossing the Cumberland and Pennsylvania Railroad, immediately west of the west end of the Narrows, the said Pennsylvania Railroad shall at that point cross to the west side of Wills' Creek, and proceeding on a line on the west side of said creek, shall not recross said creek before reaching a point at least four hundred feet southeast of the National road bridge over said creek, and shall cross the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad at the point where said branch intersects the said National road; and provided also that after recrossing Wills' Creek at the point above named, the line of the said Pennsylvania Railroad shall at no point infringe upon the line of condemnation, or right of way of the Cumberland and Pennsylvania Railroad, excepting at the point where it crosses the Potomac Wharf Branch of said road at its intersection with the said National road; *and provided also that said Pennsylvania Railroad after crossing Wills' Creek, west of the west end of the Narrows, shall have the option, instead of recrossing said creek at a point not less than four hundred feet southeast of the National road bridge, as above provided for, of remaining on the west side of said creek and crossing the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad, at any point on the west side of Wills' Creek, either above or at grade, as may be found most convenient and practicable; and the choice of either route herein above provided for shall be final;* and provided also, that if the said Pennsylvania Railroad Company shall elect to construct its railroad upon that line hereinbefore described, which provides for its recrossing Wills' Creek from the west side thereof at a point not less than four hundred feet south-east of the National road bridge; then and in that event, said Pennsylvania Railroad Company shall

construct and is hereby required to construct from its main line aforesaid, a branch line on the east or west side of Wills' Creek to a point on the basins of the Chesapeake and Ohio Canal at Cumberland, or in lieu thereof, said company may contract with any existing railroad company leading to said basin or basins for the transportation of its cars thereto ; said contract to be for a period of ninety-nine years, and renewable for a like period; and in crossing the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad, with the branch road aforesaid, said Pennsylvania Railroad Company shall have the same rights and be subject to the same conditions, regulations and limitations as are herein provided for the crossing of said Potomac Wharf Branch by the main line of said Pennsylvania Railroad Company."

Sec. 2.   Provides for notice of the proposed places of crossing, and also whether the same are proposed to be made at grade or above grade, and also for the making of a contract therefor, and confers the right to condemn, in case no contract is made.

Sec. 3.   Confers the right upon the Pennsylvania Railroad Company to cross the track or tracks of the Baltimore and Ohio Railroad Company.

The 4th and 5th sections are not material to be particularly noticed.

We have copied at length all the provisions of the Act applicable to the case, because in construing a statute, every part of it must be considered.   The particular provision which has given rise to most dispute is that designating the routes of the Pennsylvania Railroad, giving to the appellant the option between the routes prescribed, and making that option final.

That part of the Act is printed in italics.   On the 11th day of June, 1878, Mr. Healey, then president of the appellant, gave notice in writing to the vice-president of the appellee, that the Pennsylvania Railroad Company

has decided to abandon the plan of recrossing Wills' Creek below the National road bridge, and notifying him that the Pennsylvania Railroad Company proposes at an early date to make a crossing at grade over the Potomac Wharf Branch, at a point designated in the notice on the west side of Wills' Creek, and offering to pay $100 for the easement of said crossing in perpetuity. On the 16th day of August following, Mr. Mayer, President of the Cumberland and Pennsylvania Railroad Company, in a letter addressed to Mr. Williams, attorney of appellant, said, "the proposal for crossing" (the Potomac Wharf Branch at the east end of the Narrows,) "made to me by Mr. Healey in writing, and believed to be dated June 11th, 1878, has been accepted by me." The appellant proceeded to construct its road to the Potomac Wharf Branch on the west side of the creek, and some distance beyond, and located and was engaged in constructing its road across the creek to the east side thereof, some distance below; and considering it was entitled to make the crossing of Potomac Wharf Branch under and by virtue of a contract with the Cumberland and Pennsylvania Railroad Company, proceeded to make the crossing against the will of the latter company, and to restrain and prevent the appellant from using the crossing, the bill in this case was filed and the injunction granted.

We shall refer to the alleged contract hereafter, at present, we are considering only the construction of the Act of 1878. The contention on the part of the appellees is, that after exercising the option provided for in the Act, and electing to cross the Potomac Wharf Branch on the west side of the creek, it is bound to construct its road to its terminus entirely on the west side of the creek, and has no power or right to cross to the east side thereof. That the option given by the Act, is a choice between a line entirely on the east side of the creek and one on the west side, and having elected the latter, the election is by

the terms of the law, final.    This construction was adopted by the Circuit Court, and one of the grounds upon which the injunction was made perpetual, was that assuming the contract for the crossing existed, as the appellant contends, such contract was made with a view and purpose of pursuing the western side route, and constituted a part of that route; and that the unauthorized deflection from the line prescribed by the Act, deprived the appellant of the right to the crossing.   On this point we think the learned Judge of the Circuit Court was in error.   If the provisions of the law were observed, and a contract made as alleged, the appellant was entitled to cross the Potomac Wharf Branch at the point where the crossing was made.   A departure from the statutory line afterwards, even if such departure was made, would give to the appellees no good cause of complaint, or any ground for maintaining the injunction.   But we do not stop to discuss that point at length, because according to our construction of the Act of 1878, we think the appellant, after electing to cross the Potomac Wharf Branch on the west side of the creek, is not compelled to construct its road to its *terminus* on that side.   The only routes designated and prescribed by the Act are to the places of crossing the Potomac Wharf Branch, on the east side or the west side of the creek.   Beyond those points the Act is altogether silent, so far as respects any designation of route.   It provides, that after crossing the Potomac Wharf Branch at its intersection with the National Road, it shall not infringe upon the line of condemnation or right of way of the Cumberland and Pennsylvania Railroad.   This is the only thing said, with respect to its route after crossing the Potomac Wharf Branch on the east side of the creek.   In the same manner there is no designation or prescription of the route beyond the crossing of the Potomac Wharf Branch on the west side of the creek, nor any thing in the law requiring the appellant

to continue its route on the west side of the creek, after crossing the Potomac Wharf Branch, if it shall so elect, on that side. The error, it seems to us, into which the appellees have fallen is in construing the Act, as intending to prescribe the entire route of the appellant's road from its entrance into the Narrows to its *terminus.* There is nothing in the law to warrant this construction. The road was entitled to go to "some convenient point in the City of Cumberland." This is the *terminus* fixed by its charter, and recognized by the Act of 1878. That *terminus* might be on either side of Wills' Creek. The Act of 1878 was intended to enlarge the powers of the appellant, and ought not to be construed as limiting them, except such a construction be justified by the plain words of the Act, or by reasonable inference from its provisions. It was not necessary, looking to the circumstances under which the Act was passed, and to the views and objects of its projectors, that the road, after it had got through the Narrows, should be restricted to one side or the other of Wills' Creek. That is an inconsiderable stream, and is referred to in the law only as a geographical feature in the description of the route.

In considering the provisions of the Act, it seems to us that its main and leading purpose, was to confer upon the appellant the right to cross the railroads of the appellees, and to give to the latter full and complete protection of its right of way, and security at the crossings, so as to interfere as little as practicable with its business operations. Therefore, the Act provides that after crossing the appellees' road west of the west end of the Narrows, the appellant's road shall cross to the west side of the creek, and proceed on a line on that side, and not recross the creek till it reaches a point at least 400 feet below the National road bridge. When it reached that point, it would be below the Narrows and might recross to the east side without interfering with the right of way of

the appellees except at the crossing.  Then the Act provides, in effect, that if it recrosses the creek at that point, so as to make it necessary to cross the Potomac Wharf Branch on that side, the place of such crossing shall be at the intersection of that branch with the National road. There the designation of the route in the Act stops. Then the option is given instead of recrossing the creek at the point designated and crossing the Potomac Wharf Branch on the east side, to remain on the west side and cross the Potomac Wharf Branch at any convenient point on the west side.   Here also, the designation of the route by the Act terminates.    And it is provided that the "choice of either route herein above provided shall be final."   The only routes herein above provided are to the crossing places of the Potomac Wharf Branch.   It was not the purpose of the Act to prescribe any route beyond those points, that the appellant was free to determine under its charter.

The option given in the law is between crossing the the Potomac Wharf Branch on the east side, and crossing it on the west side of the creek.   These are the material subjects provided for in the Act.   The option of remaining on the west side and crossing the Potomac Wharf Branch on that side, is placed in antithesis to what goes before, viz., recrossing the creek and crossing the Potomac Wharf Branch on the east side.   The word *remaining* in this connection, cannot, we think, be properly construed as requiring the road of the appellant to continue on the west side to its *terminus;* but to remain on that side until it has crossed the Potomac Wharf Branch.   It was not necessary for the purposes of the law that the route beyond that point should be prescribed.   In the circumstances existing at the time it was passed, so far as appears in the record, there was no reason whatever, looking to the interests of the public, or to the objects and purposes of the law, why the road should be required

to remain on the west side of Wills' Creek until it reached its terminus.

It is not material to the question that after the passage of the Act, the officers of the appellant contemplated extending their road on the west side of the creek. Nor have we anything to do with the events which have since occurred, inducing the appellant to construct its road on the line now proposed, or with the motives of the appellees in opposing them.

The question here is a question of the powers of the appellant under its charter and under the law. By its charter and under the provisions of the Acts of 1870 and 1874, it would clearly have the power to recross Wills' Creek, to the east side below the Potomac Wharf Branch, and according to our construction of the Act of 1878, there is nothing in its provisions to restrain or limit its powers in this respect.

Some stress has been laid by the appellees in argument, upon that provision of the Act of 1878, requiring the appellant to construct a branch line to the canal on the east or west side of the creek. This obligation is imposed only in case the road shall cross to the east side of the creek, at the particular point designated in the Act, viz., "not less than 400 feet below the National road bridge, and shall cross the Potomac Wharf Branch at the place designated on that side; and it is argued that the appellant may escape this obligation by crossing the creek lower down. This objection it seems to us is not substantial, it by no means follows that the purpose declared in the Act, that the road of the appellant shall connect with the canal, could be defeated by recrossing the creek lower down. But it appears from the record, that the appellees' contention grows out of the fact, that the appellant is about constructing its road upon the east side of the creek, so as to reach and connect with the principal basins of the canal on that side.

But the provision referred to, does not in our opinion aid or support the appellees in their construction of the Act. If the law fails to provide for the appellant's road connecting with the canal, except in the particular event or contingency named in the Act, it affords no reason why its provisions shall, in other respects, be construed to limit or restrict the powers of the appellant. There is no provision in the Act requiring the road to reach or connect with the canal, if constructed entirely on the west side of the creek.

After a most careful consideration of the Act of 1878, we are of opinion that the construction contended for by the appellees is erroneous.

With respect to the alleged contract under which the appellant claimed the right to make the crossing in question, we think after a careful examination of the testimony, that the appellant is in error, and that no such final and complete contract existed. After the notice of the 11th of June, 1878, before referred to, and the acceptance thereof in the letter of Mr. Mayer, it appears from the evidence, that the place of crossing as designated in the notice, was changed by mutual consent, and it further appears that it was also agreed and understood that a formal agreement in writing should be made conferring on the appellant the right to the easement, and specifying the manner in which it should be made and used, and securing to the appellees proper safeguards for their protection in the use of their road. This was a condition precedent to the completion of the contract. Such an agreement was made with respect to the crossing at the west end of the Narrows.

As to the crossing of the Potomac Wharf Branch, the agreement in writing was not made and signed by the parties.

A written agreement, Exhibit B, was prepared by the appellees; but the officers of the appellant objected to

some of its provisions, and were not willing to execute it. In that state of the case, it was the duty of the appellant to tender to the appellees a written agreement, expressing the terms of the contract as modified; and failing in obtaining the execution thereof by the appellees, its duty was to take legal steps to obtain its rights, or to resort to its right of condemnation under the Act of 1878. Without this, the appellant was not justified in making the crossing forcibly, and against the consent of the appellees, and for this reason, we think the order continuing the injunction was right, and ought to be affirmed.

*Order affirmed.*

(Decided 16th December, 1880.)

Pa. R. R. Co. in Md. *vs.* Consol. Coal Co. and C. & P. R. R. Co.

MILLER, J., filed the following opinion, which was concurred in by BOWIE, J.:

The construction of the Act of 1878, ch. 192, seems to me to be in no wise essential to the decision of the present case, but as it has been elaborately and ably argued by counsel on both sides, it is proper the Judges who heard the oral arguments, as well as those who have since considered the printed briefs, should express their views of it. It is also important the question should be thus considered by the Judges of this Court, because there is other litigation in reference to the location of the appellant's road now pending and awaiting a settlement of the controversy over this statute. A wide difference of opinion as to its true construction exists both among the Judges of the Court below and of this Court. Having given to the subject the best consideration I can, and being unable, on this point, to concur in the opinion of the CHIEF JUDGE, which expresses that of a majority of the Judges of this Court who have as yet considered the question, I shall with great deference give my own views thereon in this opinion. These views, I am authorized to state, are concurred in by Judge BOWIE, who was one of the four Judges who alone heard the oral arguments.

Before coming to the language of the statute itself, it is all important to ascertain and bear constantly in mind the natural features and conformation of the locality to which it refers, the roads and improvements existing in the vicinity at the date of its passage, and the circumstances which gave rise to its enactment.

It appears then that Wills' Creek, a stream of considerable volume and breadth, flows through a mountain gorge near the City of Cumberland, called "The Narrows," and empties into the Potomac River, its mouth being within the city limits. The city itself is located to the eastward of this gorge, and has been built up on both sides of this stream, but the greater part of it lies on the east side thereof.

The distance, following the creek, from the city limits to the Potomac, is not stated in the record, but from the plats of the locality exhibited to the Court in argument, I infer it does not exceed one mile.  The old National turnpike road which was constructed many years ago, passes through the city on the east side of the creek until it reaches the eastern entrance to the Narrows, and there crosses the stream by a bridge and passes through the Narrows on its western side.  The Cumberland and Pennsylvania Railroad having its terminus in that part of the city which lies east of the creek, had been located and constructed through the city and through the Narrows wholly on the east side of the creek, and did not cross to the west side until it had left for some distance the western entrance to the Narrows.  This road which is practically owned by the Consolidation Coal Company, was chiefly used for the transportation of coal from the coal regions of Allegany County to the Baltimore and Ohio Railroad, and the Chesapeake and Ohio Canal.  The Cumberland and Pennsylvania Railroad Company had also built or acquired possession of a short branch road called the "Potomac Wharf Branch," which diverges from their main road near the eastern end of the Narrows, and runs in a south-westerly direction across the National road and the creek, to a wharf on the canal basin or Potomac River, west of the creek.  The Baltimore and Ohio Railroad also passes through the city, crossing the creek at a considerable distance to the eastward of the Narrows, and pursues its westward route along the left bank of the Potomac.  The Chesapeake and Ohio Canal had also many years before been completed to Cumberland, and with basins and wharves for the shipment of coal, located some below and some above the mouth of Wills' Creek.

Such in the main, was the state of things, when in January, 1876, the appellant company was incorporated

under the Act of 1870, ch. 476, known as the free railroad law. The corporate name they assumed was, "The Pennsylvania Railroad Company," and the *termini* for their road, for the construction of which they were incorporated, are, as expressed in their ertificate of incorporation, (and which the law requires to be so expressed,) "Some convenient *point* in the City of Cumberland, and some suitable or convenient *point* near Ellerslie in Allegany County." The Act in question is an *amendment* to this charter, passed to give the corporation enlarged powers, and to remove difficulties in order to enable it to locate and construct the main line of its road *between these termini;* and this fact must be carefully remembered when the various provisions, and the language of the Act itself come to be considered.

Now what powers had this company, and what could they do under their original charter? They could unquestionably select their Cumberland *terminus* at any point within the city limits they might think most convenient, but in making this selection, it was an absolute physical necessity that the point selected should be either in that part of the city which was on the east, or in that part which was on the west side of Wills' Creek. If then they should select a point on the east side, they could locate and construct their road, (if there were no rights of other roads presenting an insuperable barrier) through the city and through the Narrows wholly on the east side of the creek, or they could cross the creek before reaching the Narrows and pass through them on the west side of the creek. So if the selection were made on the west side, they could in like manner let the road remain wholly on that side of the creek, or cross it and pass the Narrows on its east side. In such case, these alternate routes, dependent upon an east or west side location of their Cumberland *terminus* are those which the natural features of the locality indicate as the most convenient

and feasible, if not the only possible ones. Now let us suppose the company had first selected a Cumberland *terminus* and commenced the location of their road from that point, and had then found they had no power to cross "The Potomac Wharf Branch" road, and could not pass through the Narrows on the east side of the creek, because all the available space on that side had been condemned for the use of the Cumberland and Pennsylvania Railroad, so that they *were compelled to pass the Narrows on the west side of the creek*, and in that emergency they had applied to the Legislature for an Act to enable them to get *out of the city*, and through the Narrows *from east to west*. In such case, it is hardly possible to suppose they would, if they had selected an east side *terminus*, have asked for or accepted any law which would have required them, or have prescribed a route which would have compelled them to cross the branch road, and the creek at *more than one point*, or, if they had selected a west side terminus, that they would have asked for or accepted any law which would not have permitted their road *to remain on the west side of the creek* until it reached the west end of the Narrows. These considerations must also be borne in mind when we come to the provisions and language of the Act. The company however, did not select the Cumberland *terminus* first, and commence the location and construction of their road from that end. They commenced as they had the right to do, at the other *terminus* near Ellerslie, and located and built the road towards Cumberland, down and on the east side of the creek, until it reached the western entrance to the Narrows, and approached the tracks of the Cumberland and Pennsylvania Railroad. They then found they could not proceed through the Narrows on the east side of the creek without encroaching upon the right of way already condemned for the use of that road, and to do this it is conceded their charter gave them no power. But not

only was their effort to make this encroachment success-
fully resisted, but their power to *cross* the tracks of this
road was denied, and at this juncture they applied to the
Legislature, and the Act of 1878 was passed. I do not
propose to discuss the question whether the Act of 1870,
as amended by that of 1876, ch. 242, gave to corporations
which it authorized to be created, power to construct their
roads *across* the tracks of existing railroads, because I do
not regard it as material to the construction of this law,
or to the decision of the present case. The appellant
company applied to the Legislature for the passage of
this Act and *accepted* it, when passed, as an *amendment*
to their charter. They are therefore not only entitled to
all the privileges it confers, but are bound by all the con-
ditions which it imposes. It was conceded in argument
that the law was drafted and most of its provisions agreed
upon after consultation, and as the result of a mutual
understanding between the officers and counsel of the
appellant and the Cumberland and Pennsylvania Rail-
road Company. Having thus stated the main facts which
show the circumstances under which the law was enacted,
and the occasion of its passage, I come now in the light
which they throw upon the question in dispute, to con-
sider its language and provisions.

Its *title* is "an Act to enlarge the powers" of the
appellant company, and its *preamble* recites: 1st. That
this company had been incorporated and organized under
the general laws of the State, for the purpose of construct-
ing and operating a railroad from a point on the State
line near Ellerslie, to and within the City of Cumberland,
and that they are *now* ready to build their road *into* that
city with proper *depot* and terminal facilities for general
freight and passenger traffic, and also to *connect* with the
Chesapeake and Ohio Canal; and 2nd. That the only
inlet for their road to the *city* or *canal*, is through the
precipitous mountain gorge known as "The Narrows,"

through which the Cumberland and Pennsylvania Railroad is now operated on the east side of Wills' Creek. It is then in the first part of the first section enacted, that the company in order to carry out the purposes for which it was organized as stated in the preamble, shall have express authority to *cross* the tracks of the Cumberland and Pennsylvania Railroad, at a point immediately west of the western entrance of the Narrows above grade, *and* to cross the Potomac Wharf Branch of that road, *and* to cross the National road, the two last mentioned crossings to be either at or above grade, as may be determined upon by the company, as being most advisable to reach either their *depot* or the *canal*. If the sole purpose of the law had been to give the company power to *cross* these railroads and the National road, it would have stopped here, as the power of crossing is here given in the most ample terms, and nothing remained but to provide the usual safeguards in such cases. But this was not by any means the sole purpose of the makers or framers of this statute. The company had not at that time definitely selected a convenient point within the city limits for their depot and terminal facilities. That point could be selected under their original charter, and, as I have said, must of necessity be selected and located either on the east or on the west side of the creek. The framers of the law then saw it would be proper to prescribe two alternate *routes* for the road, one by which an east side, and one by which a west side terminus could be reached, and this was accomplished by the following provisions in the same first section of the Act:

"And provided also, that after crossing the Cumberland and Pennsylvania Railroad, immediately west of the west end of the Narrows, the said Pennsylvania Railroad shall at that point cross to the west side of Wills' Creek, and proceeding on the west side of said creek, shall not recross said creek before reaching a point at least four

178 MARYLAND REPORTS.

Pa. R. R. Co. in Md. *vs.* Consol. Coal Co. and C. & P. R. R. Co.

hundred feet south-east of the National road bridge over said creek, and shall cross the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad at the point where said branch intersects the said National road; and provided also, that *after* recrossing Wills' Creek at the point above named, the *line* of said Pennsylvania Railroad shall at *no point* infringe upon the line of condemnation or right of way of the Cumberland and Pennsylvania Railroad, excepting at the point where it crosses the Potomac Wharf Branch of said road at its intersection with said National road; and provided also, that said Pennsylvania Railroad after crossing Wills' Creek west of the west end of the Narrows, shall have the *option* instead of recrossing said creek at a point not less than four hundred feet south-east of the National road bridge, as above provided for, of *remaining* on the west side of said creek, *and* crossing the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad at any point on the west side of Wills' Creek, either above or at grade as may be found most convenient and practicable, and the *choice* of either *route* hereinabove provided for shall be final."

These clauses are cumbered with an excess of verbiage, but their meaning seems to me, not to be involved in any great obscurity. With deference to the differing opinions of others, it is plain to my mind, that by these provisions the Legislature has said to this company: "Your road shall cross Wills' Creek to its west side at the west end of the Narrows, and shall pass through the Narrows on that side, and shall remain on that side until it reaches a point at least four hundred feet south-east of the National road bridge, *then* if you select your terminus in that part of the city which lies on the east side of the creek, you shall cross the same to the east side at such a point as will enable you to cross the branch road at its intersection with the National road, and then your line or route to

your terminus must keep clear of the limits of condemnation or right of way of the main line of the Cumberland and Pennsylvania Railroad which is located in that part of the city; *but* if you select your terminus on the west side of the creek, then your road shall remain altogether on that side, and in that event you may cross the branch road at any point you may find most convenient and practicable to reach your terminus; and you shall have the right to choose either of these *routes*, but your choice of either shall be final." That is my construction of these provisions. I cannot find in them a single word or passage which contemplates or allows a recrossing to the east side of the creek, at any other point than that which is specially designated. True, the *exact* point of recrossing is not defined, but the limit of four hundred feet and the obligation to cross the branch road at its intersection with the National road, place the point of crossing the creek within very narrow limits. If then the clause which contains the *option* were not in the law, it seems to me too plain to admit of doubt, that but one *route* would have been prescribed, and that this would of necessity have involved but this one crossing and the selection of an east side terminus; for looking to the maps and diagrams of the locality which have been exhibited to the Court, I do not suppose any constructing engineer who was obliged to build the road across the creek to its east side at this point, would *ever dream* of taking it back again to the west side, and then again to the east side, (and do all this within the city limits, and within the built up portions thereof,) in order to reach an east side terminus, or that he would, after crossing at this point, select a west side terminus, which would involve a recrossing to the west side, and I am quite sure no such tortuous and expensive route, even if it were possible to pursue it, ever entered the minds of the framers of the Act or the officers and counsel of the two companies who

agreed upon its provisions.  In construing a statute like this, it is absolutely essential to apply its language to the locality and subject-matter with which it deals, and let these speak as interpreters where the meaning would otherwise be ambiguous, doubtful or obscure.  If such then is the effect of the clauses which precede it, what is the office, and ·what was the object of the option clause?  It seems to me plain that its purpose was to give the company the choice of another and an alternate route to reach a west side terminus, if they should not choose to select one on the east side.  Here again the plats and diagrams indicate that the shortest, most practicable, if not the only feasible route to reach such a terminus, is for the road to remain on the west side of the creek, and so, in my judgment, the clause in express terms provides.  It gives the " road " the " option instead of recrossing " the creek to its east side, at the place " above provided " for that purpose, " of *remaining* on the west side of said creek, *and* crossing the 'branch road' at any point on the west side of said creek, either above or at grade, as may be found most convenient and practicable."  This language, as I read it, expresses in plain and unambiguous terms the purpose of the Legislature to *confine the road* to the west side of the creek, if it did not cross to the east side at the place previously designated.  The right to cross this branch road having been previously granted, the crossing of it on the west side, is mentioned here merely as an incident or necessary consequence of the road's remaining on that side, and not as a point to be reached or an object to be accomplished *by* its so remaining.  If the clause had read, " the said road shall have the option instead of recrossing said creek at a point not less than four hundred feet south-east of the National road bridge as above provided for, of remaining on the west side of said creek, and the choice of either route hereinabove provided for, shall be final," no one could doubt what the routes were, or

that by one of them the road would be confined entirely to the west side of the creek.   And yet the omitted words "and crossing the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad at any point on the west side of Wills' Creek, as may be found most convenient and practicable," give no additional *power* or *privilege* to the company, and I cannot see how the insertion of such mere surplus verbiage can have any material bearing upon the construction and effect of the clause. Shortly stated, the meaning of these several clauses as I read and construe them, is that the road shall *either* cross the creek to its east side at the designated place, *or* shall remain on its west side.

The principal argument in opposition to this construction, is to the effect that it was the sole purpose of all these clauses to prescribe two alternate places for crossing the branch road, and the two *routes* spoken of are simply routes to reach these two places.   In other words that one route commences (after the road passes the Narrows) at the point of divergence, rendered necessary in order to reach the place where the branch road intersects the National road and *ends* at this intersection, and the other commencing from the same point of divergence extends to the branch road on the west side and *ends there*, so that after crossing the branch road on the west side, the road could thereafter cross to the east side, wherever the company might choose to locate such crossing, and by that route reach an east side terminus.   But this construction, with great deference to the able counsel who have urged it with so much emphasis and ingenuity, appears to me to be wholly untenable.   In the first place it renders unnecessary a large part of these provisions.   In the former part of the section, the right to cross this branch road, either at or above grade is unconditionally granted, and the road is then taken through the Narrows on the west side of the creek to a point where all necessity of

interference with the main line of the Cumberland and Pennsylvania Road was removed. Why then if the construction contended for be correct did not the law stop here? The right of crossing this branch road where they pleased, and as they pleased, was fully secured to the company, and they only desired to, and could in fact cross it but once with their main line. By stopping here, the law gave them the undoubted right to do just what in fact they have since done, that is to cross the branch road on the west side of the creek first, and then cross the creek to its east side, and build their road by this route towards an east side terminus. I am, therefore, unable to perceive why this company should have asked, or the other company have desired the Legislature to prescribe two alternate crossings of the branch road, and above all, to designate specially a place for crossing the creek and the branch road on its east side, if such crossing was to have no reference to a route by which an east side terminus was to be reached. Again the construction contended for dwarfs the significance of the term "route," as applied to the locality and subject-matter referred to, by confining it to the very short space between the point of divergence and the branch road; but more than all it requires the words "remaining on the west side of said creek *and* crossing the branch road," to be either stricken out of the statute, or to be read as meaning that the road is required to remain on that side *only until* it crosses this branch, and then it may go on either side of the creek wherever the company may choose its location. If the law means this, then, in my judgment, the law-makers have used terms which in their ordinary acceptation, as applied to the subject-matter of which they were speaking, express the very opposite idea. If they had meant this I am sure they would have employed no such language, and I cannot place any such construction upon it.

But the construction I have placed on these clauses, though it may well rest on what has already been said,

OCTOBER TERM, 1880. 183

Pa. R. R. Co. in Md. *vs.* Consol. Coal Co. and C. & P. R. R. Co.

seems further to be strengthened and confirmed by the following clause also in the same section, and which is in these words:

"And provided also that if said Pennsylvania Railroad Company shall *elect* to construct its railroad upon *that line* herein before described, which provides for its recrossing Wills' Creek, from the west side thereof at a point not less than four hundred feet south-east of the National road bridge, *then and in that event,* said Pennsylvania Railroad Company *shall construct,* and is hereby *required* to construct from its *main line aforesaid,* a branch line *on the east or west side* of Wills' Creek, to a point on the basins of the Chesapeake and Ohio Canal at Cumberland, *or in lieu thereof,* said company may contract with any existing railroad company leading to said basin or basins for the transportation of its cars thereto, said contract to be for a period of ninety-nine years, and renewable for a like period, and in crossing the Potomac Wharf Branch of the Cumberland and Pennsylvania Railroad, with the branch road aforesaid, said Pennsylvania Railroad Company shall have the same *rights* and be subject to the same conditions, regulations and limitations as are herein provided for the crossing of said Potomac Wharf Branch by the main line of said Pennsylvania Railroad Company."

The obvious purpose of this provision, is to secure a connection of this road with the canal, in pursuance of a long continued and well settled policy of the State, to have such connections made by all railroads constructed in that locality. Its requirements are plain and explicit. If the *main line* of the appellant's road should recross the creek to the east side at the place designated, and the company should elect to take *that route,* then they are required to build a branch line to the canal, on the east side of the creek, if the starting point is from the main line on that side, and on the west side, if the starting

point be from the main line on that side; and power to cross the Potomac Wharf Branch road with this *branch line* which had not before been given is granted in express terms. Without doubt, this provision was considered by the Legislature as an important feature of the law, a requirement which they did not intend should be evaded, or become nugatory or useless. But by its terms, the obligation to construct this branch line, or make the contract provided for, is imposed *only in the event* the company should elect to build their main road upon the *line* that conducts it across the creek at the designated point, and it is hardly possible to conceive that the law-makers would have been thus specific as to this condition, if they had not supposed they had provided *this* as the *only place* at which the main road could recross, and this as the *only route* by which an east side terminus could be reached. It would have been folly to exact the construction of this branch line, only in this event, if the previous clauses gave the right to recross the creek at any other place lower down, by the adoption of which the company would be released from the obligation to build any branch to or make any connection with the canal.

Finally such was the construction placed upon the Act by the company itself, before it passed into the control of its present managers. After the road had been located and partly constructed through the Narrows down to the four hundred feet point, it became necessary for the company to exercise the *option* provided by the law, and this was done, as is very clearly shown by the letter of the 11th of June, 1878, written by Mr. Healey, *its then* President, to the Vice-President of the Cumberland and Pennsylvania Railroad Company. In this letter, Mr. Healey says: "The Pennsylvania Railroad Company, (in Maryland,) has decided *to abandon* the plan of recrossing Wills' Creek, below the National road bridge," and he then notifies the Cumberland and Pennsylvania Company, that it

is the purpose of his company, at an early date, to make a crossing at grade over the Potomac Wharf Branch at a designated point on the west side of the creek.  It is plain that before and at the time this letter was written, the officers of this company had no idea that if they *abandoned* the plan of recrossing the creek at the point stated they could afterwards cross it at any other point, for the testimony in the record very clearly shows that at that time it was their *intention* to locate and construct their road *entirely on the west side*, down to Washington street and Henderson's basin, which is immediately connected with the canal, and to make the terminus of their road at that place.    They had in fact then located and were taking steps to condemn the greater part of this route. The plan of crossing at the point now selected and used for that purpose was evidently an afterthought, a plan devised and adopted by the present managers of the company in order to avoid the effect of the *election* made by their predecessors.    But the company having once made the election which the law provides, the choice became *final,* and if this construction of the statute is correct, then in crossing to the east side at the place where it is admitted they have so crossed, they are pursuing a route not only not authorized but forbidden by their charter.

I come now to the questions involved in the present case.    The injunction which was granted on the 18th of August, 1879, upon the bill filed by the appellees, restrains and forbids the appellants from using a crossing of the Potomac Wharf Branch Road on the west side of the creek which they had put in at a particular point by violence and against the consent of the complainants.  It is not necessary to examine the averments of the bill in order to ascertain whether the injunction was rightfully granted in the first instance or not, because the case is now before this Court upon appeal from an order continuing the injunction passed after answers had been filed

and a large amount of testimony taken, and the question therefore is whether this latter order is correct upon the state of case made out by this proof.

It appears to have been the purpose of the original corporators and organizers of this company to construct a road for general freight and passenger traffic between Cumberland and the State line, where it would connect with the Pennsylvania system of railways. As originally designed it would not reach the coal regions, and would not therefore become a competitor in the transportation of coal with the roads of the appellees. But in May, 1879, parties interested in building a new road, called the Georges' Creek and Cumberland Railroad, which extends to the coal regions and is designed to be a coal-carrying road, obtained a controlling interest in the appellant company by purchase of its stock, and subsequently put out the old and put in a new Board of Directors, and then sought to connect this new road with the appellant's road at the west end of the Narrows, so as to carry its coal over the latter road into Cumberland. This made the appellant's road, or at least this part of it, a direct competitor and rival in business with the Cumberland and Pennsylvania Railroad, and therefrom and thereafter opposition to its construction arose on the part of the appellees. But with this competition and rivalry Courts of justice have nothing to do. They are not the guardians or protectors of the mere business interests of either of these companies, nor indeed of any other corporation. It is solely with the property and legal rights of these contesting companies that this Court has now to deal, and in this respect each of them stands and is entitled to stand before a judicial tribunal upon precisely the same footing as the other.

I have no doubt as to the right of the appellant to cross the Potomac Wharf Branch Road at the point in question, provided it has acquired that right by due con-

demnation of the easement or by contract, for a crossing at this point is strictly within the line of the authorized west side route. It did not proceed to condemn, and the question is, has it acquired the right by contract? But assuming it had acquired the right in either mode, it is insisted:

*First.*—That as the appellant has, after making this crossing, pursued or intended to pursue a route not authorized by the Act of 1878, it has committed or is about to commit a fraud upon the law, and can be restrained in so doing at the instance of the appellees. But in my opinion the appellees are not made the vindicators of the law in this respect, and have no right to complain. If the appellant has lawfully pursued a prescribed and authorized route down to and including this crossing, it is no concern of the appellees whether that route is *thereafter* followed or not. There may be some show of authority for the position taken by the appellees, but the better considered and now well established principle goes at least to this extent, that a land-owner cannot restrain a corporation in the exercise of its powers of condemning his land for the use of its road, on the ground that a *subsequent* material variation from the prescribed route is being made or intended to be made, provided that in *coming to and passing through* his land, it is on its lawful route, and acting within the limits of its charter. *Kerr on Injunctions,* 300, 301; *Newton vs. Agricultural Branch Railroad Corporation,* 15 *Gray,* 27. But it is further contended:

*Secondly.*—That having acquired the crossing for the purposes of its road as originally designed, and to accommodate the traffic of such a road, it is not competent for the appellant now to devote it to the purposes of another road which will require a larger and more frequent use of the easement, and consequently subject the appellees to greater inconvenience and trouble. There is much more force and reason in this position, and I think

that, under the circumstances of this case, it must, at least, have the effect of throwing upon the appellant the *onus* of showing by clear and satisfactory proof that it had, at the timé the crossing was put in, a valid, subsisting and perfected contract with the appellees authorizing it to make it. The remaining question therefore is, does the proof show the existence of such a contract?

It is supposed that such a contract is contained in, and evidenced by two letters, the first being that of Mr. Healey already referred to, of the 11th of June, 1878, and the other a letter dated the 16th of August following, from Mr. Mayer, the President of the Cumberland and Pennsylvania Railroad Company, to Mr. Williams, the counsel and attorney of the appellant. In the first letter, Mr. Healey, after stating the abandonment of the plan of re-crossing Wills' Creek below the National road bridge, proceeds to give notice, in accordance with the terms of the Act of 1878, that his company proposes at an early date to make a crossing at grade over the Potomac Wharf Branch, at a specified point on the west side of the creek, and says that his company " hereby offers the Cumberland and Pennsylvania Railroad Company one hundred dollars for the easement of said crossing in perpetuity." He requests an answer to this proposition within ten days, and encloses a tracing describing the proposed crossing. An interval of more than two months elapsed before the letter of Mr. Mayer was written. In the meantime nego-tiations had been going on between the two companies in reference to the crossings at the west end of the Narrows which resulted in an agreement bearing date the 20th of June, 1878. This agreement specifies the mode in which these crossings should be made, that the sum of $1000 should be paid therefor, and that a formal agreement or deed embodying the details, should be executed, accom-panied by a map or plat indicating and describing the same with more certainty. On the 9th of August, a

formal deed prepared in duplicate, to be executed by both companies, and *granting* in formal terms the easement of these west end crossings was executed by Mr. Mayer under the seal of his company, and on the 14th or 15th of the same month was in like manner executed by the Vice-President of the appellant, and annexed thereto was a map or plat in which the points and manner of the crossings were indicated. Previous to this time, Mr. Healey had verbally mentioned to Mr. Mayer, a slight change in the place of crossing the Potomac Wharf Branch, from that designated in his letter of the 11th of June, and this change of location was verbally accepted by the latter. On the 16th of August, the formal duplicate deeds for the west end crossings were interchanged and delivered, and on that day the sum of $1000 was paid to Mr. Mayer by Mr. Williams in behalf of Mr. Healey who was then absent from Cumberland. A misunderstanding had arisen before this payment was made, as to whether this sum included payment for the crossing of the Potomac Wharf Branch, Mr. Mayer insisting that it did not, and Mr. Williams that it did. The check which Mr. Healey had left for the money so stated, and Mr. Mayer refused to receive it. At this interview and at the request of Mr. Williams, the letter of the 16th of August, 1878, was written by Mr. Mayer, and is as follows: "My Dear Sir: The one thousand dollars received by me this day in payment of the easement of crossing as described in a deed executed by me, August 9th, 1878, in the City of Baltimore to the Pennsylvania Railroad Company in Maryland, has nothing to do with the crossing of the Potomac Branch at grade, at the east end of the Narrows, which matter is to be hereafter settled between myself and Mr. Healey. The proposal for such crossing made to me by Mr. Healey in writing, believed to be dated June 11th, 1878, has been accepted by me."

No violence is done to the language of this letter by reading the last clause of it as referring exclusively to the

*price* to be paid for the crossing and as an acceptance of the offer to pay $100 therefor. It does not appear to have been written for the purpose of accepting Healey's proposal so as to make an unconditional and completed contract under which the crossing could be put in without anything further being done between the parties, for, as I read it, it speaks of the crossing of the Potomac Branch at the east end of the Narrows as a *matter* to be *thereafter* settled between the writer and Mr. Healey. The least however that can be said of it is that it presents such a case of ambiguity as to allow preceding, attendant, and subsequent events and circumstances to be looked at by the Court for the purpose of arriving at its true meaning and construction. The record is full of testimony on this subject and it would extend this opinion beyond all reasonable limits to set out the facts in detail, or even to give an abridged narrative of them. I have examined the testimony very carefully, and though on some points there is conflict between witnesses, I am satisfied, more especially from the documentary proof consisting of letters, telegrams and written papers referring to the subject, that these two letters do not, and were not intended to embody or constitute such a completed contract as I have said it was necessary for the appellant to prove. Apart from everything else bearing on the question, I think the testimony clearly shows that up to a short time before the crossing was put in, and certainly up to the time when the control of this company passed into the hands of its present owners, it was well understood by the Presidents and other officers of both companies, that before the crossing should be, or could be put in, a formal agreement or deed granting the right, and embodying the terms and conditions under which the crossing should be conducted and used, similar to that under which the west end crossings had been permitted and effected, should be prepared and executed by both companies; and that the execution of

such an agreement or deed was to be a condition prece-
dent to the acquisition of any right to the easement by
contract. No such agreement was ever so executed. One
was prepared and executed by the appellees in Septem-
ber, 1878, but its terms and conditions were not accepta-
ble to the new president of the appellant, and he refused
to sign it. It matters not what were the grounds of such
refusal, for if he could not obtain a modification of these
conditions, or if the two companies could not agree as to
the terms to be embodied in the agreement, then the
attempt to acquire the crossing by contract fell through,
and it became the right and duty of the appellant to
exercise the power of condemnation which its charter
gave it in the most ample terms. This unquestion-
ably lawful course it did not pursue, but proceeded to
construct the crossing forcibly and despite the protest
and resistance of the appellees. This was an unlawful
invasion of the right of property for which an injunction
is the proper remedy. The appellees stand in the same
position as any land-owner over whose land a railroad
company is proceeding to construct its road without law-
ful right, and the authorities are clear that in such case a
Court of equity has jurisdiction to prevent the wrong. In
my judgment therefore the order continuing this injunc-
tion should be affirmed.